Whitaker, Judge,
delivered the opinion of the court:
This case is now before the court on the question of the 'value of the lands which we held the defendant took from plaintiff (95 C. Cls. 23) and the amount of the offsets to which the defendant is entitled.
The commissioner has found, pursuant to agreement between the parties, that the amount taken was 64,086 acres on ;-the north of the reservation and 14,525 acres on the west. All of the acreage on the west and all but 17,251 acres on the ■north have been incorporated within national forests. Of the 17,251 acres on the north 3,672.58 acres thereof were patented under the Timber and Stone Act (20 Stat. 89) ■between November 18,1897 and June 6,1932; 715.86 acres in isolated tracts, not coming under the Timber and Stone Act, 'were disposed of at various dates from 1921 to 1932, and the balance are homestead acres, or have been otherwise disposed of for considerations other than cash.
We held in our former opinion that the acreage on the north was appropriated by the defendant in 1894. All of it, except for 12,000 or 13,000 acres, was timber land. Of the ■timber land about 20,810 acres consisted of Ponderosa pine, which was the most valuable for timber purposes. The balance was Douglas fir and hemlock and related species.
Except for 12,000 or 13,000 acres, the land had no value *745 except for the timber on it. When it was taken, this timber had no present value, but only a speculative one, because there was no railroad or other means of transporting the logs or lumber from the tract, and because there were millions of -acres of similar undeveloped timber lands in this vicinity and in other mountainous sections on the West coast. All the witnesses both for plaintiff and defendant testified that the timber at the time it was taken had only “a nominal or ■speculative value;” and that it had no market value “in the sense that there were willing buyers and willing sellers.”
On June 3, 1878 Congress passed the Timber and Stone Act, supra, authorizing the sale of timber lands in the States of California, Oregon, Washington, and Nevada at a minimum price of $2.50 per acre, but no lands in the -vicinity of the tract taken from plaintiff by the defendant were sold under this Act until November 18, 1897, about three years after the taking, when 32.70 acres were sold. The next sale was about 18 months later, on April 20, 1899, when 40 acres were sold. Between November 18, 1897, and June 6,1932, a period of thirty-five years, only 3,672.58 acres had been sold.
The price of $2.50 per acre applied to any lands coming within the terms of the Act, and, so, any buyer contemplating the purchase of lands at this price would, of course, select the best lands that could be found. It follows that the best of the lands in this tract could not have had a value of more than $2.50 per acre. We seriously doubt that any of it had so great a value in 1894. However, the witness upon whose testimony defendant chiefly relies, one Julian E. Bothery, after having testified that this land in 1894 had only .a nominal or speculative value, nevertheless fixed this nominal or speculative value for the 20,810 acres covered by Pon-derosa pine at a maximum of $2.50 per acre. The balance of the land, both that covered with timber and the part not covered with timber, he valued at fifty cents an acre. The land not covered with timber was good pasture land, but too stony and steep for cultivation, except for a negligible part.
This valuation we regard as quite liberal, but we accept it because it is the testimony of a witness introduced by and, therefore, vouched for by defendant.
*746 This gives a value of $52,025.00 for the acreage covered by Ponderosa pine, and $21,638.00 for the balance, or a total of $73,663.00 for all the acreage taken on the north of the reservation.
Plaintiff’s witness, Mason, places a higher value on the-lands, but his testimony is based on a false premise. Un-ascertained what he thought was the value of the land at the time he testified and then, to get the 1894 value, he discounted this at six percent per annum. This, of course,, is purely theoretical and is contrary to his own testimony that there was no market value for the lands in 1894, in the sense of a willing seller and a willing buyer. It is, of course, the value at the time of the taking that must be paid in order to give just compensation for the taking. Fort Berthold Indians v. United States, 71 C. Cls. 308, 339-340. Cf. Ithaca Trust Co. v. United States, 279 U. S. 151, 155.
The land on the western part of the tract was covered by Douglas fir and hemlock and related species. One of defendant’s witnesses says that this land was entirely valueless, another one said that it had “only a negligible value.” It was on the top of the Cascade Eange of mountains, remote from any means of transportation. However, Eothery placed a valuation on it of fifty cents an acre. We are sure it had no greater value, but, again, we accept the opinion of defendant’s witness, and place upon it this valuation of fifty cents an acre, or a total value for the 14,525 acres of $7,262.50.
This is a total of $80,925.50 for the entire acreage appropriated by the defendant. Plaintiff is entitled to recover this amount from defendant, plus 4 percent interest on $73,663.00 from June 6, 1894, and on $7,262.50 from July 1,1911, in order to give the plaintiff the present full equivalent of the value of the lands on the date they were taken. Seminole Nation v. United States, 102 C. Cls. 565. This totals $241,084.56.
Against this amount defendant claims offsets for gratuities totaling $2,622,660.41, as set out in the report of the General Accounting Office filed in this case.
Under the terms of the Jurisdictional Act defendant is entitled to an offset for “gratuities, if any, paid to or *747 ■expended for said Indian tribe or bands or either of them.” Among the items set out in the report of the General Accounting Office is one of $252,089.72 for “care and protection ■of Indian timber lands.” This expenditure was not required by treaty or other agreement with plaintiff and was a pure :gratuity. We have held that plaintiff is entitled to $241,084.56 for the taking of their lands. Against this sum :an equal amount of the item for care and protection of Indian timber lands will be offset.
We do not pass upon defendant’s claim for other gratuities. Seminole Nation v. United States, 816 U. S. 286; Seminole Nation v. United States, 316 U. S. 310.
It results that plaintiff’s petition must be dismissed. It is so ordered.
Madden, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Jones, Judge, took no part in the decision of this case.